# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**JOHN C.,**

      **Plaintiff,**

                           **Case No. 2:20-cv-12732**

   **v.**                       **Magistrate Judge Norah McCann King**

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security[1],**

      **Defendant.**


## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff John C. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Commissioner's decision.

## I.    PROCEDURAL HISTORY

On March 17, 2017, Plaintiff filed an application for benefits, alleging that he has been disabled since June 12, 2016. R. 125, 141, 215–16. That application was denied initially and upon reconsideration. R. 144–49, 152–54. Plaintiff sought a *de novo* hearing before an

---

[1] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

administrative law judge. R. 155−56. Administrative Law Judge ("ALJ") Leonard Costa held a

hearing on July 22, 2019, at which Plaintiff, who was represented by counsel, testified, as did a

vocational expert. R. 52−111. In a decision dated September 18, 2019, the ALJ concluded that

Plaintiff was not disabled within the meaning of the Social Security Act from June 12, 2016, the

alleged disability onset date, through the date of that decision. R. 35−47. That decision became

the final decision of the Commissioner of Social Security when the Appeals Council declined

review on July 20, 2020. R. 17−22.  Plaintiff timely filed this appeal pursuant to 42 U.S.C. §

405(g). ECF No. 1. On October 5, 2020, Plaintiff consented to disposition of the matter by a

United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules

of Civil Procedure. ECF No. 4.[2] On October 6, 2020, the case was reassigned to the undersigned.

ECF No. 5. The matter is now ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has

explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative
> record and asks whether it contains sufficien[t] evidence to support the agency's
> factual determinations. And whatever the meaning of substantial in other contexts,
> the threshold for such evidentiary sufficiency is not high. Substantial evidence, this

---

[2]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases
seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot
Project (D.N.J. Apr. 2, 2018).

Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting

*Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted));
*see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists
only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is
overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or
"ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of
Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see
K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into
account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp.
at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular
format in conducting [the] analysis," the decision must contain "sufficient development of the
record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d
501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir.
2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an
expression of the evidence s/he considered which supports the result, but also some indication of
the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121
("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication
of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing
*Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a
comprehensive explanation for the rejection of evidence; in most cases, a sentence or short
paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).  Absent
such articulation, the Court "cannot tell if significant probative evidence was not credited or
simply ignored." *Id.* at 705. As the Third Circuit explains:

4

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

### B.    Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the

impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

III.     **ALJ DECISION AND APPELLATE ISSUES**

The Plaintiff was 43 years old on his alleged disability onset date. R. 45. Plaintiff met the insured status requirements of the Social Security Act through December 31, 2020. R. 37. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between June 12, 2016, his alleged disability onset date, and the date of the decision. R. 37.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: multiple sclerosis ("MS"), migraines, visual disturbance, cognitive disorder, depression, and panic disorder. R. 38.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 38−40.

At step four, the ALJ found that Plaintiff had the RFC to perform sedentary work subject to various additional limitations. R. 40−45. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as an electrician or pipe layer. R. 45.

At step five, the ALJ found that a significant number of jobs−*i.e.*, approximately 18,000 jobs as an addressing clerk; approximately 20,900 jobs as a document preparer; approximately 5,200 jobs as a final assembler−existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 46−47. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from his alleged disability onset date of June 12, 2016, through the date of the decision. R. 46.

Plaintiff disagrees with the ALJ's findings at steps three and four and asks that the decision of the Acting Commissioner be reversed and remanded for further proceedings.

*Plaintiff's Brief,* ECF No. 17; *Plaintiff's Reply Brief*, ECF No. 20. The Acting Commissioner

takes the position that her decision should be affirmed in its entirety because the ALJ's decision

correctly applied the governing legal standards, reflected consideration of the entire record, and

was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to*

*Local Civil Rule 9.1,* ECF No. 18.

## IV.   SUMMARY OF RELEVANT MEDICAL EVIDENCE

On January 24, 2019, Plaintiff presented as a new patient to Charles Asta, M.D., a

neurologist at Sovereign Medical Group, for evaluation of Plaintiff's MS. R. 534−36. Dr. Asta

noted that Plaintiff had been prescribed Rituxan in 2016, that this medication "was providing

coverage" for Plaintiff, and that Plaintiff had not experienced any obvious progression of motor

or sensory deficits. R. 534. While on Ocrevus, Plaintiff had reported significant fatigue. *Id*.

Plaintiff also reported the following: sharp shooting pain originating in the left neck, radiating

into the left shoulder and terminating in the left hand; left hand numbness; pins and needles in

his feet radiating to the mid shin areas; poor sleep due to his pain and depression; difficulty fully

inhaling when on Wellbutrin; occasional tripping and sense of imbalance but without falling; a

sense of imbalance appears twice a month for a couple of hours; no bowel or bladder

involvement. R. 534−35. Dr. Asta noted that Plaintiff's vision was stable without deterioration of

visual fields and that Plaintiff was not currently on any psychiatric medication. R. 535.  On

clinical examination, Plaintiff was in no acute distress and had normal tone, bulk, and strength in

the muscle groups in all four extremities. *Id*. Plaintiff's gait was normal and his Romberg

demonstrated minimal swaying. R. 536. Plaintiff's sensation to pinprick was reduced in the left

hand to the left forearm as well as in the left lateral foot. *Id*. His psychiatric exam revealed no

reduced verbal output, delusions, or hallucinations. R. 535. He was continued on his current MS

regimen of Ocrevus infusions every 6 months, R. 536, and in fact received an infusion at his next appointment on February 14, 2019. R. 532−33.

At his April 17, 2019, office visit, Plaintiff reported no side effects or complications from his last infusion and no further deterioration of his motor function, but did report left-sided paresthesias and occasional pain symptoms as well as paresthesias in the bilateral lower extremities. R. 529. He also complained of a poor sleep cycle and problems with his memory and focus. and was prescribed medication for those problems. R. 530. Upon examination, Dr. Asta noted that Plaintiff had normal tone, bulk, and strength in the muscle groups in the four extremities. R. 529−30.  His gait was normal and his Romberg demonstrated minimal swaying. R. 530. Plaintiff's sensation to pinprick was reduced in the left hand to the left forearm as well as the left lateral foot. *Id*. Plaintiff had normal coordination and his deep tendon reflexes were symmetric. *Id*. His vision and psychiatric examinations were normal. R. 529−30.

At his July 15, 2019, office visit, R. 526−28, Plaintiff complained of difficulty focusing and recalling conversations and getting lost while driving. R. 527. He also reported difficulty paying for some of his prescribed medication and failure to take other medication as prescribed, which resulted in a "hangover effect" the next day. *Id*. Plaintiff reported burning, sharp, and stabbing pain in his legs and feet but no headaches or migraines or back or joint pain. *Id*. Dr. Asta again noted that the muscle groups in Plaintiff's four extremities were of normal tone, bulk, and strength. *Id*. His sensation to light touch was decreased in the left forearm, left hand, and left foot. *Id*. Romberg was present while pronator drift was absent and his coordination and gait were normal. *Id*. Plaintiff was continued on his MS regimen, his medication was adjusted, and he was prescribed medication for chronic fatigue. *Id*.

On that same date, Dr. Asta completed a six-page, check-the-box, and fill-in-the-blank

form entitled, "Multiple Sclerosis Residual Capacity Questionnaire." R. 520−25. Dr. Asta

confirmed that Plaintiff suffered from MS, which had been diagnosed through a brain MRI and

lumbar puncture and that the diagnosis had been "finalized" by an MS Center in Teaneck, New

Jersey. R. 520. Plaintiff's symptoms included fatigue, balance problems, poor coordination,

weakness, unstable walking, numbness/tingling, sensory disturbance, pain, difficulty

remembering, depression, emotional lability, difficulty solving problems, double or blurred

vision/partial or complete blindness, increased muscle tension (spasticity), bladder problems,

sensitivity to heat, and speech/communication issues. R. 520−21. Dr. Asta opined that Plaintiff

had "significant and persistent disorganization of motor function in tow [sic] extremities

resulting in sustained disturbance of gross and fine motor movement or gait and station[.]" R.

521. In support, Dr. Asta noted as follows: "Patient drops phone frequently as well as [illegible]

into other objects. Weakness and lack of dexterity is sudden without warning. Fingers loose [sic]

sensitivity [illegible]." *Id*. According to Dr. Asta, Plaintiff's prognosis was "[g]uarded." Dr. Asta

also answered "Yes" to the following question: "Does your patient have significant reproducible

fatigue of motor function with substantial muscle weakness on repetitive activity, demonstrated

on physical examination, resulting from neurological dysfunction in areas of central nervous

system known to be pathologically involved by the multiple sclerosis process?" *Id*. In support,

Dr. Asta explained that Plaintiff "uses cains [sic] for ambulation. He needs occasional assistance

with walking and carrying objects." *Id*. According to Dr. Asta, Plaintiff had four to five "bed

bound days" in the last year as well as ten to fifteen "moderately severe days / month with

limited mobility." *Id*. Dr. Asta opined that "[m]ost of the month he wouldn't be able to work @

all." R. 522. Dr. Asta also indicated that Plaintiff complains of the type of fatigue typical of MS

patients, that emotional factors contribute to the severity of Plaintiff's symptoms and functional

limitations, and that Plaintiff's physical and emotional impairments are reasonably consistent with the symptoms and functional limitations described and which are typical of MS. *Id*. Moreover, according to Dr. Asta, Plaintiff's fatigue or other symptoms were severe enough to constantly interfere with attention and concentration and Plaintiff was severely limited in his ability to tolerate work stress. *Id*. Plaintiff's impairments began no later than January 24, 2019. R. 522–23. In an assessment of Plaintiff's ability to engage in work-related activities, Dr. Asta opined that Plaintiff could not walk any city blocks without rest; that he could continuously sit for 15 minutes at a time, continuously stand for only 5 minutes at a time, and sit and stand/walk for a total of less than 2 hours in an eight-hour work day. R. 223. Plaintiff would need a job that permits shifting positions at will, that he would need to take unscheduled work breaks every 10 minutes during an eight-hour workday, that his legs should be elevated, and that he would need a cane or other assistive device while engaging in occasional standing/walking. R. 523–24. Dr. Asta also opined that Plaintiff could occasionally lift and carry less than 10 pounds in a competitive work environment; that he has significant limitations in performing repetitive reaching, handling, or fingering; and that he could use his hands and arms for other work-related activities only 15% of the time during an eight-hour workday. R. 524. He could never bend or twist at the waist and must avoid all exposure to extreme cold and heat, high humidity, fumes, odors, dusts, gases, perfumes, cigarette smoke, soldering fluxes, solvents/cleaners, and chemicals. *Id*. Finally Plaintiff's impairments were likely to produce "good days" and "bad days." R. 525. According to Dr. Asta, Plaintiff "[i]s totally disabled[.]" *Id.*

## V.      DISCUSSION

### A.      Step Three

Plaintiff challenges the ALJ's finding at step three of the sequential evaluation that Plaintiff's impairments neither meet nor medically equal Listing 11.09B, which addresses MS. *Plaintiff's Brief*, ECF No. 17; *Plaintiff's Reply Brief*, ECF No. 20. Plaintiff's challenge is not well taken.

At step three, an ALJ considers whether the combination of the claimant's medically determinable impairments meets or equals the severity of one of the impairments in the Listing of Impairments. 20 C.F.R. § 404.1520(a)(4)(iii). An impairment meets a listed impairment if it satisfies "'*all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.'" *Jones,* 364 F.3d at 504 (quoting *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990)) (emphasis in original). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the *overall* functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan*, 493 U.S. at 531 (emphasis added). "[T]he medical criteria defining the listed impairments [are set] at a higher level of severity than the statutory standard" because the "listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Id.* at 532 (emphasis in original) (quoting 20 C.F.R. § 416.925(a)). Although an ALJ is not required to use "particular language" when determining whether a claimant meets a listing, the ALJ's discussion must provide for "meaningful review." *Jones*, 364 F.3d at 505 (citing *Burnett*, 220 F.3d at 120). Accordingly, if the ALJ's decision, "read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that [the claimant] did not meet the requirements

for any listing," "[t]his discussion satisfies *Burnett*'s requirement that there be sufficient explanation to provide meaningful review of the step three determination." *Id.*

Listing 11.09 addresses MS. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.09 (eff. March 14, 2018, through April 1, 2021). To meet Listing 11.09, a claimant must satisfy the criteria under paragraph A or B.[3] Under 11.09A, the claimant must establish "[d]isorganization of motor functioning in two extremities[], resulting in an extreme limitation[] in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities[.]" *Id.* Under 11.09B, a claimant must demonstrate a marked limitation[4] in physical functioning[5] and a marked limitation in one of the following areas of mental functioning:

1. Understanding, remembering, or applying information [];[6] or

2. Interacting with others [];[7] or

---

[3] Plaintiff challenges only the ALJ's consideration of subsection B of Listing 11.09. *See Plaintiff's Brief*, ECF No. 17; *Plaintiff's Reply Brief*, ECF No. 20.

[4] Although the regulation does "not require the use of such a scale, 'marked' would be the fourth point on a five-point scale consisting of no limitation, mild limitation, moderate limitation, marked limitation, and extreme limitation. We consider the nature and overall degree of interference with your functioning. The term 'marked' does not require that you must be confined to bed, hospitalized, or in a nursing home." *Id.* at § 11.00G2.

[5] A marked limitation in physical functioning means that, due to the signs and symptoms of the claimant's neurological disorder, the claimant is "seriously limited in the ability to independently initiate, sustain, and complete work-related physical activities." *Id.* at § 11.00G2a; *see also id.* at § 11.00G3a (providing examples of physical functioning).

[6] "This area of mental functioning refers to the abilities to learn, recall, and use information to perform work activities." *Id.* at § 11.00G3b(i) (providing the following examples that illustrate the nature of this area of mental functioning: understanding and learning terms, instructions, procedures; following one- or two-step oral instructions to carry out a task; describing work activity to someone else; asking and answering questions and providing explanations; recognizing a mistake and correcting it; identifying and solving problems; sequencing multi-step activities; and using reason and judgment to make work-related decisions).

[7] "This area of mental functioning refers to the abilities to relate to and work with supervisors, co-workers, and the public." *Id.* at § 11.00G3b(ii) (providing the following examples that illustrate the nature of this area of mental functioning: cooperating with others; asking for help when needed; handling conflicts with others; stating your own point of view; initiating or sustaining conversation; understanding and responding to social cues (physical, verbal,

3. Concentrating, persisting, or maintaining pace [];[8] or

4. Adapting or managing oneself [].[9]

*Id.*

Here, at step two, the ALJ determined that Plaintiff suffers the severe impairments of MS, migraines, visual disturbance, cognitive disorder, depression, and panic disorder. R. 38. At step three, the ALJ determined that Plaintiff's impairments, considered singly or in combination, did not meet or medically equal a listing, including, *inter alia*, Listing 11.09, reasoning as follows:

> With respect to Listing 11.09, the record does not document disorganization of motor function in two extremities, resulting in an extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities. Nor does it support a marked limitation under the requirements of 11.09(B). Accordingly, this Listing is not met or equaled.

*Id.*

Plaintiff disagrees with this ALJ's finding, contending that the ALJ's conclusion in this

---

emotional); responding to requests, suggestions, criticism, correction, and challenges; and keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness. These examples illustrate the nature of this area of mental functioning).

[8] "This area of mental functioning refers to the abilities to focus attention on work activities and to stay on-task at a sustained rate." *Id.* at § 11.00G3b(iii) (providing the following examples that illustrate the nature of this area of mental functioning: initiating and performing a task that you understand and know how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day).

[9] "This area of mental functioning refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting." *Id.* at § 11.00G3b(iv) (providing the following examples that illustrate the nature of this area of mental functioning: responding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions).

regard is simply a "conclusory finding" that tracks the listing requirements and that the ALJ's failure to provide a "substantive analysis as to why Listing 11.09(B) was not met" requires remand. *Plaintiff's Brief*, ECF No. 17, pp. 19–26; *Plaintiff's Reply Brief*, ECF No. 20, pp. 1–4. Plaintiff specifically insists, *inter alia*, that he has a marked limitation in physical functioning in using one upper and one lower extremity and a marked limitation in his ability to understand, remember, or apply information. *Id*.

Plaintiff's arguments are not well taken. As previously discussed, the ALJ is not required to use "particular language" when determining whether a claimant meets a Listing; the discussion must simply provide for "meaningful review." *Jones*, 364 F.3d at 505. Although the ALJ's consideration of the paragraph B criteria of Listing 11.09 is brief, *see* R. 38, the decision, taken as a whole, supports the ALJ's conclusion in this regard. *See Fullen v. Comm'r of Soc. Sec.*, 705 F. App'x 121, 124 (3d Cir. 2017) ("In this case, like *Jones*, the ALJ's decision, read as a whole, illustrates that the ALJ's conclusion that Fullen did not meet the requirements for any Listing . . . was supported by substantial evidence."); *Jones*, 364 F.3d at 505 ("the ALJ's decision, read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that [the Claimant] did not meet the requirements for any listing"). For example, when determining whether Plaintiff's mental impairments met or medically equaled Listings 12.02, 12.04, or 12.06, the ALJ explained why he found that Plaintiff had only a moderate limitation in the ability to understand, remember, or apply information, reasoning as follows:

> In understanding, remembering, or applying information, the claimant has a moderate limitation. He reported that his impairments affect his memory and understanding (Ex. 6E). At his consultative examination, he recalled three out of three items immediately but after five minutes he remembered only one item. He was also oriented to person and place but could only estimate his appointment occurring in the middle of June. He was properly able to interpret a proverb and could spell "world" forwards and backwards (Ex. 9F). At his neuropsychological testing, his visual learning and memory were in the impaired to low average range;

15

his verbal learning and memory were in the borderline range; and his reasoning was in the average range (Ex. 7F). His treatment records show that although he reported memory concerns, his examinations revealed intact memory (Ex. 10F). Although he reported that he sometimes gets lost driving, the claimant still drives, which requires some understanding, remembering, and applying information (Ex. 6E, 10F, 12F). He also performs household tasks such as cooking, doing laundry, and shopping, which requires some understanding, remembering, and applying information. He also watches television, which requires some understanding and remembering (Ex. 6E).

R. 38−39. In addition to this analysis at step three, the ALJ provided, at step four, a

comprehensive review of the medical and record evidence relevant to Listing 11.09. R. 41−45.

The ALJ expressly acknowledged that Plaintiff was diagnosed with MS prior to the alleged onset

date, R. 41, but noted that, in November 2016, Plaintiff's psychiatric and musculoskeletal exams

had been normal;  that in February 2017, Plaintiff had reported no new neurologic complaints

and his psychiatric exam had been normal and a musculoskeletal exam had revealed only poor

tandem gait; that Debra Ibrahim, D.O., a consultative examiner, had reported in May 2017 a

normal gait pattern without deviation, ability to heel-walk and toe-walk, normal range of motion

in bilateral shoulders, elbows, wrists, knees, hips, ankles, cervical spine, and lumbar spine,

normal examination of left shoulder with normal range of motion except for  a mildly positive

Hawkins maneuver, no tenderness around both knees and normal range of motion, no laxity with

anterior or posterior drawer testing, a negative McMurray's test bilaterally and a negative

Spurling maneuver in the cervical spine, negative straight leg raising bilaterally in both the

supine and seated positions, full strength in the upper and lower limbs, intact sensation to light

touch in the bilateral upper and lower limb dermatomal points, 2+ and symmetric reflexes in the

upper and lower limbs bilaterally, absent ankle clonus bilaterally, and x-rays showing small

osteophytes in the left knee and moderate narrowing of L5-S1 and anterior osteophyte formation

on L4 and L5, but normal x-rays of the left shoulder; Dr. Asta's[10] January 2019 findings of, *inter alia*, generally normal musculoskeletal exam, normal gait and Romberg demonstrating minimal swaying, reduced sensation to pinprick in the left hand to the left forearm and in the left lateral foot, normal tone, bulk, and strength of the muscles, and no reduced verbal output, delusions, or hallucinations on the psychiatric exam; Plaintiff's report in April 2019 of, *inter alia*, no side effects or complications from his infusion and no further deterioration of his motor function; Dr. Asta's findings in July 2019 of, *inter alia*, normal tone, bulk, and strength in the muscle groups in the four extremities; decreased sensation to light touch in the left forearm, left hand, and left food; normal coordination and gait; and the present Romberg but absent pronator drift. R. 42–44. Reading the opinion as a whole, this thorough review by the ALJ of the evidence relevant to Listing 11.09 permits meaningful review by this Court. *See Jones*, 364 F.3d at 505; *Fullen*, 705 F. App'x at 124; *Klangwald v. Comm'r of Soc. Sec.*, 269 F. App'x 202, 204 (3d Cir. 2008) ("After broadly concluding that [the claimant] 'has no impairment, which meets the criteria of any of the listed impairments,' the ALJ followed this conclusion with a searching review of the medical evidence. Under our precedents, this is sufficient.").

Finally, although Plaintiff cites to other portions of the medical record that he believes support his argument that he meets or medically equals Listing 11.09, *Plaintiff's Brief*, ECF No. 17, pp. 23–26; *Plaintiff's Reply Brief*, ECF No. 20, pp. 1–4, the Court "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)); *see also*

---

[10] The Court addresses Plaintiff's challenges to the ALJ's consideration of Dr. Asta's opinions later in this Opinion and Order.

*Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard]."); *Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 880 (3d Cir. 2005) ("When 'presented with the not uncommon situation of conflicting medical evidence . . . [t]he trier of fact has the duty to resolve that conflict.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)). The Court therefore declines Plaintiff's invitation to re-weigh the evidence or to impose his or this Court's own factual determination. *See Chandler*, 667 F.3d at 359; *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Circ. 2014) (stating that a reviewing court "must not substitute [its] own judgment for that of the fact finder").

In short, and fairly reading the ALJ's decision as a whole, this Court concludes that substantial evidence supports the ALJ's finding that Plaintiff's impairments do not meet or medically equal any listing, including Listing 11.09.

### B.   The Opinion of Charles Asta, M.D.

Plaintiff argues, *inter alia*, that the ALJ erred when weighing the opinion of Charles Asta, M.D., his treating neurologist. *Plaintiff's Brief*, ECF No. 17, pp. 27–32; *Plaintiff's Reply Brief*, ECF No. 20, pp. 4–6. This Court disagrees.

An ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34,

42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed before March 27, 2017,[11] "'[a] cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204, 209 (3d Cir. 2019) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)); *see also Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355 (3d Cir. 2008) (stating that an ALJ should give treating physicians' opinions "great weight") (citations omitted); *Fargnoli*, 247 F.3d at 43 (3d Cir. 2001) (stating that a treating physician's opinions "are entitled to substantial and at times even controlling weight") (citations omitted). However, "[a] treating source's opinion is not entitled to controlling weight if it is 'inconsistent with the other substantial evidence in [the] case record.'" *Hubert v. Comm'r Soc. Sec.*, 746 F. App'x 151, 153 (3d Cir. 2018) (quoting 20 C.F.R. § 404.1527(c)(2)); *see also Brunson v. Comm'r of Soc. Sec.*, 704 F. App'x 56, 59–60 (3d Cir. 2017) ("[A]n ALJ may reject the opinion of a treating physician when it is unsupported and

---

[11] As previously noted, Plaintiff's claim was filed on March 17, 2017. For claims filed after March 27, 2017, the Commissioner's regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources").

inconsistent with the other evidence in the record."). "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Morales*, 225 F.3d at 317 (internal quotation marks and citations omitted). The ALJ must consider the following factors when deciding what weight to accord the opinion of a treating physician: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole; (5) the treating source's specialization; and (6) any other relevant factors. 20 C.F.R. § 404.1527(c)(1)–(6). Accordingly, "the ALJ still may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019) (quoting *Morales*, 225 F.3d at 317); *see also Nazario*, 794 F. App'x at 209–10 ("We have also held that although the government 'may properly accept some parts of the medical evidence and reject other parts,' the government must 'provide some explanation for a rejection of probative evidence which would suggest a contrary disposition.'") (quoting *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994)); *Morales*, 225 F.3d at 317 ("Where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit[.]"); *Cotter*, 642 F.2d at 706–07 ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, . . . an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted).

At step four of the sequential evaluation process, the ALJ found that Plaintiff had the

RFC to perform a limited range of sedentary work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except he can occasionally climb ramps and stairs; occasionally stoop, kneel, crouch, balance, or crawl; and never climb ladders, ropes, or scaffolds. He can have no exposure to unprotected heights or hazardous machinery; frequently handle and finger objects; occasionally push/pull controls with the upper and/or lower extremities; and must use a cane to ambulate for more than 50 feet or on uneven terrain. He can have occasional interaction with the general public, co-workers, and supervisors; is able to understand, remember, and carry out simple instructions with only occasional changes to essential job functions; and is able to make simple work-related decisions. He could sit up to 6 hours per day but no more than one half hour at a time, and then would need to stand/shift positions for 2-3 minutes.

R. 40. In reaching this determination, the ALJ assigned "[l]ittle weight" to Dr. Asta's opinion,

reasoning as follows:

> Dr. Asta opined that the claimant is totally disabled due to MS. Dr. Asta opined that the claimant was limited to a less than sedentary exertional capacity (Ex. 11F). Little weight is afforded to this opinion since it lacks sufficient explanation and is contrary to the weight of the medical evidence including Dr. Asta's own treatment records. Dr. Astra began treating the claimant in January 2019 and saw him on only four occasions prior to rendering his decision. His treatment records consistently show normal muscle tone, bulk, and strength and without reduced range of motion (Ex. 12F).

R. 44. The Court sees no error in the ALJ's reasoning in this regard. The ALJ explicitly

considered Dr. Asta's treating relationship with Plaintiff but discounted his opinion because (1) it

lacked sufficient explanation; (2) it was inconsistent with the medical evidence, including Dr.

Asta's own treatment notes which showed, *inter alia*, normal muscle tone, bulk, and strength and

without reduced range of motion; and (3) Dr. Asta saw Plaintiff on only four occasions before

rendering his opinion. *Id*. Substantial evidence supports the ALJ's reasoning in this evaluation of

Dr. Asta's opinion. *See* 20 C.F.R. § 404.1527(c)(1)−(6); *id*. at § 404.1527(c)(2)(i) ("Generally,

the longer a treating source has treated you and the more times you have been seen by a treating

21

source, the more weight we will give to the source's medical opinion."); *Louis v. Comm'r Soc. Sec.*, 808 F. App'x 114, 118 (3d Cir. 2020) ("Whether or not Louis can perform occupational duties is a legal determination reserved for the Commissioner.") (citing 20 C.F.R. § 404.1527(d)); *Brunson*, 704 F. App'x at 59‒60 (finding that the ALJ "appropriately gave less weight" to medical opinions where although one physician concluded the plaintiff "was limited in his work abilities, his report lacked adequate support for this determination" and that physician's "conclusion conflicted with both [the plaintiff's] self-reported daily activities and [the physician's] own positive reports after [] surgery" and discounted another physician's opinion as "inconsistent with the record evidence[,]" including that physician's "own findings that [the plaintiff] maintained normal grip strength and intact reflexes"); *Zonak v. Comm'r of Soc. Sec.*, 290 F. App'x 493, 497 (3d Cir. 2008) ("[T]he ALJ was not obligated to give significant weight to Dr. Kumar's opinion as to Zonak's ability to work because the opinion related to the ultimate issue of disability—an issue reserved exclusively to the Commissioner."); *Phillips v. Barnhart*, 91 F. App'x 775, 780 (3d Cir. 2004) (concluding that the ALJ appropriately assigned limited weight to a treating physician's opinion where his "treatment notes, and in particular the treatment notes during the [relevant period], d[id] not support a finding that [plaintiff] was disabled at any time"); *Morris v. Barnhart*, 78 F. App'x 820, 823 (3d Cir. 2003) (finding that treating psychiatrist was "not entitled to any presumption of controlling weight" where the psychiatrist saw the Plaintiff "on only three or four occasions over two or three months . . . , so his opinion does not reflect judgment based on 'continuing observation of the patient's condition over a prolonged time'") (citation omitted); *Metzger v. Saul*, No. CV 19-270, 2019 WL 3530442, at *7 (E.D. Pa. Aug. 2, 2019) ("Moreover, courts have consistently held that an ALJ may grant less weight to a treating physician's opinion where it conflicts with his or her own

treatment notes.") (citations omitted); *O'Neill v. Comm'r of Soc. Sec.*, No. CV 18-0698, 2019
WL 413539, at *7 (D.N.J. Jan. 31, 2019) ("The ALJ here reasonably discounted the opinion at
issue upon a reasonable reading of seemingly contradictory treatment notes.").

       Plaintiff acknowledges that Dr. Asta's treatment records reflect normal muscle tone, bulk,
and strength and no reduced range of motion, but nevertheless insists that the ALJ erred in his
consideration of Dr. Asta's opinion where that physician's treatment notes contain "other key
findings, such as documented fatigue and cognitive difficulties, which support his opinion."
*Plaintiff's Brief*, ECF No. 17, p. 30 (citations omitted). Plaintiff goes on to argue that Dr. Asta's
opinion is consistent with other evidence in the record. *Id.* (citations omitted); *Plaintiff's Reply
Brief*, ECF No. 20, pp. 4–6. Plaintiff's arguments are not well taken. As a preliminary matter,
Plaintiff apparently relies, at least in part, on Dr. Asta's recording of Plaintiff's own subjective
complaints in the treatment notes. *See id*. However, the mere memorialization of a claimant's
subjective complaints in a medical record does not transform those complaints into objective
findings or a medical opinion. *Hatton*, 131 F. App'x at 879 ("[A] medical source does not
transform the claimant's subjective complaints into objective findings simply by recording them
in his narrative report[.]") (summarizing *Craig v. Chater*, 76 F.3d 585, 590 n. 2 (4th Cir. 1996));
*Morris*, 78 F. App'x at 824–25 ("[T]he mere memorialization of a claimant's subjective
statements in a medical report does not elevate those statements to a medical opinion.") (citations
omitted); *Famularo v. Comm'r of Soc. Sec.*, No. CV 20-1655, 2021 WL 613832, at *7 (D.N.J.
Feb. 17, 2021) ("[A] claimant's own subjective report about her symptoms[] does not become a
medical opinion by virtue of being recorded in treatment notes.") (citations omitted). In any
event, as previously noted, the Court "will uphold the ALJ's decision even if there is contrary
evidence that would justify the opposite conclusion, as long as the 'substantial evidence'

23

standard is satisfied." *Johnson*, 497 F. App'x at 201; *see also Chandler*, 667 F.3d at 359; *Hatton*, 131 F. App'x at 880. The Court therefore declines Plaintiff's invitation to re-weigh the evidence or to impose his or this Court's own factual determination. *See Chandler*, 667 F.3d at 359; *Zirnsak*, 777 F.3d at 611.

Accordingly, for all these reasons, the ALJ's consideration of Dr. Asta's opinion enjoys substantial support in the record.

### C.    Subjective Complaints

Plaintiff also challenges the ALJ's consideration of his subjective complaints, contending that the ALJ did not adequately explain his rejection of Plaintiff's testimony and that the ALJ erred in failing to discuss all the regulatory factors and "improperly focus[ed] on objective findings." *Plaintiff's Brief*, ECF No. 17, pp. 34−36; *see also Plaintiff's Reply Brief*, ECF No. 20, pp. 6−7. Plaintiff's arguments are not well taken.

"Subjective allegations of pain or other symptoms cannot alone establish a disability." *Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. § 416.929(a)). Instead, objective medical evidence must corroborate a claimant's subjective complaints. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) (citing 20 C.F.R. § 404.1529(a)). Specifically, an ALJ must follow a two-step process in evaluating a claimant's subjective complaints. SSR 16-3p, 2016 WL 1119029 (March 16, 2016). First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id*. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit

24

an individual's ability to perform work-related activities[.]" *Id.*; *see also Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) ("[Evaluation of the intensity and persistence of the pain or symptom and the extent to which it affects the ability to work] obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.") (citing 20 C.F.R. § 404.1529(c)). In conducting this evaluation, an ALJ must consider the objective medical evidence as well as other evidence relevant to a claimant's subjective symptoms. 20 C.F.R. § 404.1529(c)(3) (listing the following factors to consider: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate pain or other symptoms; treatment, other than medication, currently received or have received for relief of pain or other symptoms; any measures currently used or have used to relieve pain or other symptoms; and other factors concerning your functional limitations and restrictions due to pain or other symptoms). Finally, an "ALJ has wide discretion to weigh the claimant's subjective complaints, *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and may discount them where they are unsupported by other relevant objective evidence." *Miller*, 719 F. App'x at 134 (citing 20 C.F.R. § 416.929(c)); *see also Izzo v. Comm'r of Soc. Sec.,* 186 F. App'x 280, 286 (3d Cir. 2006) ("[A] reviewing court typically defers to an ALJ's credibility determination so long as there is a sufficient basis for the ALJ's decision to discredit a witness.").[12]

---

[12]SSR 16-3p superseded SSR 96-7p on March 26, 2016, and eliminated the use of the term "credibility."  SSR 16-3p.  However, "while SSR 16-3P clarifies that adjudicators should not make statements about an individual's truthfulness, the overarching task of assessing whether an individual's statements are consistent with other record evidence remains the same." *Levyash v. Colvin*, No. CV 16-2189, 2018 WL 1559769, at *8 (D.N.J. Mar. 30, 2018).

Here, the ALJ followed this two-step evaluation process. The ALJ specifically considered Plaintiff's subjective complaints. R. 40–41. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause symptoms, but that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. 41. As previously discussed, the ALJ detailed years of medical evidence and record testimony to support his findings, R. 41–45, and specifically found that Plaintiff's "statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent with the objective evidence discussed herein." R. 41. In the view of this Court, this record provides substantial support for the ALJ's decision to discount Plaintiff's subjective statements as inconsistent with the record evidence. *Van Horn*, 717 F.2d at 873; *Miller*, 719 F. App'x at 134; *Izzo*, 186 F. App'x at 286.

However, as previously noted, Plaintiff contends that the ALJ did not adequately explain his rejection of Plaintiff's complaints where the ALJ did not consider Plaintiff's activities of daily living, his medication, or other regulatory factors, requiring remand. *Plaintiff's Brief*, ECF No. 17, pp. 34–36; *see also Plaintiff's Reply Brief*, ECF No. 20, pp. 6–7. This Court disagrees. As discussed earlier in this Opinion and Order, the ALJ detailed years of record evidence regarding Plaintiff's mental and physical impairments and explained why this objective evidence did not support the severity or limiting effects of Plaintiff's subjective complaints. R. 41–45. The ALJ also specifically considered Plaintiff's medications when crafting the RFC. R. 42 ("He reported improved vision and cognitive function since starting Rituxan."), 43 ("He was prescribed Wellbutrin XL for depression and continued on his current MS regimen" and, "He

26

also reported that he had difficulty fully inhaling when he was on Wellbutrin and that he was not currently on any psychiatric medication."), 44 ("He was provided samples of Lyrica due to polyneuropathy and prescribed Adderall and Klonopin for attention deficit and sleeping difficulties[.]" and that, although he could not afford Adderall medication, Plaintiff "reported that he did not take his Lyrica medication as instructed but rather increased his nighttime dosing, which resulted in a 'hangover effect' the next day. However, he reported occasional benefit with the dosage)," and that Plaintiff "was continued on his MS regimen, had his Lyrica medication adjusted, prescribed an alternate medication to Adderall, and prescribed medication for chronic fatigue"). Additionally, reading the opinion as a whole, the Court notes that the ALJ expressly considered Plaintiff's daily activities at step three, implicitly reflecting the extent to which these activities belied the severity of Plaintiff's subjective complaints. R. 39 (noting that, while Plaintiff reported that "he sometimes gets lost driving, the claimant still drives, which requires some understanding, remembering, and applying information []. He also performs household tasks such as cooking, doing laundry, and shopping, which requires some understanding, remembering, and applying information. He also watches television, which requires some understanding and remembering" and that Plaintiff "drives a car, counts change, and shops in stores, which require some concentration, persistence, and maintaining pace"; that Plaintiff's "treatment records consistently noted him as independent in his activities of daily living (Ex. 10F). Observations of treating practitioners generally show the claimant had no deficiencies in hygiene, although at times he was disheveled").[13] In any event, "[t]he fact that the ALJ did not

---

[13] In this respect, Plaintiff's reliance on *Frankowski v. Berryhill*, No. 2:16-cv-8846, 2018 U.S. Dist. LEXIS 138081 (D.N.J. Aug. 14, 2018) is inapposite. (The Court notes that Plaintiff attached a copy of this decision from the Court's docket and the Court is unable to find a Westlaw citation to this case.) *See Plaintiff's Brief*, ECF No. 17, pp. 35–36 (quoting *Frankowski*, 2018 U.S. Dist. LEXIS 138081, at *13, that the ALJ failed to "cite any evidence as to

discuss all of the § 404.1529 factors does not warrant remand, given that his credibility determination was supported by substantial evidence." *Lewis v. Comm'r of Soc. Sec.*, No. CV 15-1587, 2016 WL 4718215, at *7 (D.N.J. Sept. 9, 2016); *see also Mason v. Colvin*, No. 15-1861, 2015 WL 6739108, at *6 (D.N.J. Nov. 3, 2015) ("The list [of factors contained in 20 C.F.R. § 404.1529(c)] is not comprehensive, nor is it mandatory for ALJs to go through each factor on the list in their opinions.") (citing 20 C.F.R. § 404.1529(c)(3)); *Ladd v. Astrue*, No. CIV.A. 12-4553, 2014 WL 2011638, at *1 n.2 (E.D. Pa. May 16, 2014) ("However, neither this policy statement [in SSR 96-7p], nor § 404.1529(c)(3) (the governing regulation), mandates a specific finding as to each of the seven factors listed in § 404.1529(c)(3)(i)–(vi). The regulatory framework provides instead that an ALJ must consider 'objective medical evidence,' as well as the claimant's 'own statements' and 'other relevant evidence in the case record.'") (citing SSR 96–7p). Moreover, as discussed above, the Court must affirm the ALJ's decision when it is supported by substantial evidence even if Plaintiff points to evidence that supports the opposite conclusion. *See Johnson*, 497 F. App'x at 201.

For all these reasons, the Court concludes that the ALJ sufficiently explained his reasoning in assessing Plaintiff's subjective complaints, and the ALJ's findings in this regard are supported by substantial evidence in the record and are therefore entitled to this Court's deference. *See* SSR 16-3p; *Miller*, 719 F. App'x at 134; *cf. Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x. 761, 765 (3d Cir. 2009) ("Credibility determinations as to a claimant's testimony regarding pain and other subjective complaints are for the ALJ to make.") (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)); *Davis v. Comm'r Soc. Sec.*, 105 F. App'x 319,

---

Frankowski's activities of daily living, his medication, or the other factors included in § 416.929(c)(3), that contradict his allegations of disabling pain") (internal quotation marks omitted).

322 (3d Cir. 2004) (finding that the ALJ sufficiently evaluated the plaintiff's testimony where "the ALJ devoted two pages to a discussion of claimant's subjective complaints and cited Claimant's daily activities and objective medical reports"). Accordingly, the ALJ's assessment of Plaintiff's subjective complaints cannot serve as a basis for remand of this action. *Id*.

### D.      Lay Witness Testimony of Jacqueline Conte

 Finally, Plaintiff contends that the ALJ erred when considering the third-party statements of Plaintiff's daughter, Jacqueline Conte. *Plaintiff's Brief*, ECF No. 17, pp. 36−38. The Court of Appeals for the Third Circuit expects an ALJ to address the testimony of third-party witnesses. *Burnett,* 220 F.3d at 122; *see also* SSR 16-3p (providing that an ALJ must consider "the entire case record, including . . . information provided by . . . other persons").

In the case presently before the Court, the ALJ considered Ms. Conte's hearing testimony, noting that Plaintiff's "daughter, Jacqueline Conte[,] testified that he has problems with his memory[.]" R. 41. Plaintiff contends that this solitary reference to Ms. Conte's testimony "failed to provide any specific reasons for his rejection of this testimony as required." *Plaintiff's Brief*, ECF No. 17, p. 38. Plaintiff contends that this error was not harmless because "Ms. Conte's testimony confirms her father's significant issues with ambulation and his memory and concentration which, if credited, undermine the ALJ's finding that Listing 11.09 is not met or equaled" and "provides supportive evidence that her father has marked limitation in his ability to understand, remember, or apply information." *Id*.

Even if the ALJ erred in failing to expressly detail and weigh Ms. Conte's hearing testimony, any such error is harmless. Plaintiff contends that Ms. Conte's testimony "confirms" Plaintiff's "significant issues with ambulation and his memory and concentration." *Id*. As discussed in detail above, however, the ALJ had already considered those issues at steps three

and four. R. 38−45. Accordingly, Ms. Conte's hearing testimony is cumulative of other record evidence that reflected Plaintiff's ambulation difficulties and moderate limitations in understanding, remembering, or applying information, and in concentrating, persisting, or maintaining pace. *See id*. Accordingly, any failure to expressly consider the details of this testimony or to explicitly weigh the testimony is harmless. *See Crosby v. Barnhart*, 98 F. App'x 923, 926 (3d Cir. 2004) (finding any error in rejecting the claimant's fiance's affidavit detailing the claimant's daily physical limitations was harmless because "[t]he fiance's description of [the claimant's] limitations mirrored her own description, which the ALJ considered"); *Buffington v. Comm'r of Soc. Sec. Admin.*, No. CIV. 12-100 JBS, 2013 WL 796311, at *9 (D.N.J. Mar. 4, 2013) ("Because Mr. Buffington's testimony is largely cumulative of Plaintiff's own testimony, which the ALJ expressly found not credible, Mr. Buffington's opinions do not have a significant effect of the outcome of the case. Although the ALJ could have been more meticulous in assessing each witness's testimony and explaining reasons for each determination of weight, the failure to do so in this case is not grounds for remand."). Accordingly, any alleged error in evaluating Ms. Conte's testimony is harmless and does not require remand. *See Rutherford*, 399 F.3d at 553.

## VI.   CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

Date:  April 5, 2022                                 *s/Norah McCann King*
                                                            NORAH McCANN KING
                                                            UNITED STATES MAGISTRATE JUDGE